## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MATTHEW ELLISON, et al.,

       Plaintiffs,

v.                                                          No. CIV 02-127 MV/LFG

GAB ROBINS, INC.,

       Defendant.

and

JOHN W. LANE and
JOHN (JACK) MCKEON,

       Plaintiffs,

                                  No. CIV 03-348 MCA/RLP

v.

GAB ROBINS, INC.,

       Defendant.

## MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION[1]
## ON PLAINTIFFS' REQUEST FOR DAMAGES, ATTORNEY'S FEES,
## COSTS AND PREJUDGMENT INTEREST

### Introduction

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

THIS MATTER is before the Court on the parties' submissions as to issues of damages and attorney's fees.  On May 16, 2005, the Honorable Chief United States District Judge, Martha Vazquez, entered a Memorandum Opinion and Order [Doc. No. 106] granting and denying in part the parties' cross-motions for summary judgment.  The Court granted Plaintiffs' cross-motion as to Task Order I claim reviewers,[2] concluding that Task Order I claim reviewers were entitled to overtime pay under the Federal Labor Standards Act ("FLSA").  The District Court denied Plaintiffs' cross-motion as to  Task Order II claim reviewers, determining that they were exempt from overtime requirements of the FLSA.  The result of the District Court's May 16, 2005 opinion was that Task Order I claim reviewers are entitled to an award of damages, while Task Order II claim reviewers are not.

The Court provided deadlines by which the parties were to submit briefs on the issue of damages.  On June 20, 2005, Plaintiffs submitted their brief on damages and attorney's fees, and on July 20, 2005, Defendant filed its response brief.  [Doc. Nos. 107, 108.]  The Court's May 16, 2005 Order did not set a deadline for a reply brief, and none was filed.

On December 7, 2005, the Court entered an Order of Reference, under 28 U.S.C. § 636(b)(1)(B), directing the undersigned Magistrate Judge to conduct a hearing and make a recommendation on the issues of damages and attorney's fees.  [Doc. No. 109.]  On December 7, 2005, this Court corresponded with counsel to determine if an evidentiary hearing was necessary or if the damages and attorney fees issues should be resolved on the parties' written submissions.  The parties advised the Court that an evidentiary hearing was not necessary.  The Court carefully

---

[2]Plaintiffs, are a group of approximately forty individuals who worked as claims reviewers on the Cerro Grande Fire project in Los Alamos, New Mexico. Task Order I and Task Order II refer to two different compensation structures that were in place during different portions of the relevant time period.

2

reviewed the pertinent law, along with the parties' briefs and attachments, and concludes that Plaintiffs' request for damages and attorney's fees should be granted in part and denied in part. The Court's reasoning follows.

## Procedural Background

On June 12, 2001, Plaintiffs filed their proposed class action complaint under 29 U.S.C. § 216(b) the FLSA in the United States District Court for the District of New Jersey. Plaintiffs were represented by New Jersey counsel, J. David Woods, and Pennsylvania counsel, Joseph E. Fieschko, Jr. The named Plaintiff, Matthew Ellison, was a resident of New Mexico. Defendant GAB was a New Jersey Corporation and represented by Chicago counsel. [Complaint.] Plaintiffs sought unpaid overtime wages for their work as claims reviewers on the Los Alamos Fire Project in New Mexico. Defendant filed a motion to transfer venue of this case to this federal District in about July 2001. On January 25, 2002, the federal district court in New Jersey issued an Order transferring the case to this District. On February 5, 2002, Plaintiffs' complaint was filed in this Court.

This District requires out-of-state counsel to associate with local counsel. Thus, both parties' out-of-state attorneys associated with local counsel. Albuquerque attorney Turner Branch entered an appearance on behalf of Plaintiffs. In addition, on August 7, 2002, the Court entered an Order substituting the Branch Law Firm for Attorney Woods. Tom Stahl entered an appearance on behalf of Defendant.

Plaintiffs' complaint was resolved on the parties' cross-motions for summary judgment. The only issue before this Court is Plaintiffs' request for damages, attorney's fees, and costs.

3

**Analysis**

**DAMAGES**

I.    **OVERTIME WAGES**

The FLSA provides that "[a]ny employer who violates the provisions . . . of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . . 29 U.S.C. § 216(b).  Based on the Court's May 16, 2005 ruling, there is no question that Task Order I claim reviewers are entitled to overtime wages.  The remaining issue relates only to the amount of overtime wages due to Plaintiffs.

Plaintiffs correctly argue that the FLSA requires employers to pay their employees at a rate one and one half times their regular rate for hours worked in excess of a 40-hour workweek. Plaintiffs discuss how the "regular rate" might be calculated but do not actually provide the Court with a calculation.  Instead, Plaintiffs argue that arriving at a calculation will be "an arduous procedure" for a number of reasons.[3]  Thus, Plaintiffs provide no figures, estimates, or calculations of the overtime compensation they seek.

Defendant, on the other hand, worked within the guidelines conceded to by Plaintiffs and created a spreadsheet for purposes of calculating the overtime owed to each Plaintiff based on the use of specific calculations.  [Doc. No. 108, p. 3.]  GAB obtained the information for its spreadsheet,

_____

[3]Notwithstanding Plaintiffs' failure to arrive at a figure for the overtime compensation, Fieschko billed at least 23 hours on overtime research, computation and calculation of damages.  [Doc. No. 107, Ex. A, Fieschko entries for 5/16/-5/20/03.]

including hours worked and per diem[4] paid, from spreadsheets previously created by Plaintiffs based on discovery produced by GAB.

GAB calculated the total overtime wages owed to Plaintiffs as being $210,869.91.[5] While Plaintiffs may dispute this figure to a minor degree, they do not submit a reply, or any evidence or persuasive argument to contradict the GAB's reasoning or calculations. Thus, the Court accepts Defendant's computations finding that the methodology used to calculate amounts owing is both reasonable and persuasive. The Court, therefore, recommends that Defendant's proposed sum of $210,869.91 in overtime wages be accepted as the amount owing to Plaintiffs.

## II.    LIQUIDATED DAMAGES

Plaintiffs argue that the Court should award an amount equal to unpaid FLSA wages as liquidated damages. The FLSA states that an employer who violates certain provisions of 29 U.S.C. § 216 must pay (in addition to any unpaid overtime compensation) "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages under the FLSA "are compensation not a penalty or punishment. Overnight Motor Transp. Co., Inc. v. Missel, 316 U.S. 572, 583-84 (1942) (internal citation omitted); Renfro v. City of Emporia, Kan., 948 F.2d 1259, 1540 (10th Cir. 1991), *cert. denied*, 503 U.S. 915 (1992). Thus, the liquidated damages provision intends to

---

[4]Plaintiffs explain that the Task Order I claim reviewers received two separate checks on a regular basis: one check represented taxable income for wages and the other, non-taxable reimbursement of expenses (the per diem check for living expenses). Plaintiffs concede that for the majority of employees, the per diem check has to be subtracted from the $34.50 wage because reimbursement of expenses for living expenses, etc. cannot be considered in calculating the regular rate. [Doc. No. 107, pp. 2-3.]

[5]Defendant arrived at this figure by calculating each employee's "regular rate," dividing the regular rate by the employee's remuneration per week ($34.50 per hour, minus per diem, divided by the total number of hours actually worked), muliplying by one-half of the regular rate for hours worked over 40. The initial sum was $229,137.67 but was adjusted to $210,869,91, to account for errors regarding two Plaintiffs' pay.

5

compensate "an aggrieved employee for losses that [may be] too obscure and difficult of proof for estimate . . . ." Id.

Section 216(b) requires that a court award liquidated damages in addition to actual damages for violations of the FLSA.  There is one exception to that requirement.  A court may utilize its sound discretion "in not awarding liquidated damages . . . when an employer shows that its action was in good faith and that [the employer] had reasonable grounds for believing the failure to pay overtime compensation was not a violation of the FLSA."  Dep't of Labor v. City of Sapulpa, 30 F.3d 1285, 1289 (10th Cir. 1994) (citing 29 U.S.C. § 260).

An employer has the burden of showing both that it acted in good faith and had reasonable grounds for believing that its actions did not violate the FLSA.  Renfro, 948 F.2d at 1541.  "In the absence of such a showing, the district court has no discretion to mitigate an employer's statutory liability for liquidated damages."  Id. at 1540 (quotation omitted).

> The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates of the Act.  The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior.

City of Sapulpa, 30 F.3d at 1289 (internal citations omitted).

This District Court found on at least one occasion that an employer's consultation with an attorney and reliance on that attorney's advise about the pertinent FLSA requirements indicated the employer acted in good faith and upon reasonable grounds.  Garcia v. Allsup's Convenience Stories, Inc., 167 F. Supp. 2d 1308, 1316 (D.N.M. 2001).  "[A]n employer establishes a good faith defense to liquidated damages by diligently consulting legal specialists and labor specialists and following their advice."  Id.  See also Pabst v. Okla. Gas & Elec. Co., 228 F.3d 1128, 1136-37 (10th Cir. 2000)

(discussing liquidated damages in FLSA case and noting that evidence of a company's reliance on attorneys or other experts in personnel matters is "particularly persuasive" in demonstrating that FLSA violations were reasonable).

Plaintiffs argue that they are entitled to an award of liquidated damages in this case because GAB did not set forth any grounds showing that it acted in good faith in failing to pay Plaintiffs' overtime wages during the Task Order I period.  The Court disagrees.

The Court concludes that Defendant provided substantial justification for its actions and that it acted in good faith in attempting to comply with the FLSA.  While the trial judge rejected Defendant's position that its payment structure met the requirements of the "salary basis"[6] test, it was a close call.  Indeed, the trial judge's thoughtful analysis makes clear that the decision could have gone the other way.  *See* Doc. No. 106, pp. 7-15.  Moreover, there is evidence in this case that GAB sought to adhere to FLSA requirements by structuring a formal pay agreement, signed by each employee, that would permit GAB to claim a bona fide administrative exemption.[7]  The only reason for structuring such a payment plan was to ensure compliance with FLSA and to claim entitlement to an administrative exception recognized by law.

In addition, Defendant provides undisputed evidence that prior to creation of the payment plan, it consulted with its own legal counsel, an FLSA legal expert, who reviewed the payment plan and approved it, based on the conclusion that the plan complied with the FLSA exemption

---

[6]The "salary basis" test is one of three prongs that must all be satisfied in order to demonstrate that an employee is employed in the administrative capacity and therefore, exempt from FLSA requirements that he or she be paid overtime compensation.  [Doc. No. 106, p. 7.]

[7]As observed by Defendant, Plaintiffs conceded that GAB's formal payment plan met "the letter, if not the spirit" of the salary basis test. [Doc. No. 107, p. 5.]  Plaintiffs successfully argued to the trial court, however, that Defendant's actual practices defeated the salary basis test.

requirements.  Further, prior to implementing the plan, it was reviewed by outside counsel, a labor law specialist, who similarly believed the plan was in accord with the FLSA.

Joseph DeBord ("DeBord"), a licenced attorney, who was GAB's Assistant General Counsel during the pertinent period, took an active role in reviewing and formulating the payment plan. DeBord handled labor and employment issues, including FLSA claims, for over 20 years prior to becoming Assistant General Counsel at GAP.  He had worked with FLSA investigators in determining the exemption status of different levels of claims adjusters.  In addition, before implementing the pay plan, DeBord obtained further confirmation of the plan's propriety and compliance with FLSA from outside labor counsel that the payment structure complied with FLSA requirements.  [Doc. No. 108, Ex. 3, DeBord Affidavit.]

In accord with its payment plan for the claim reviewers, GAB developed a spreadsheet that was accurate about 98% or 99% of the time.  Indeed, it appears there were only three instances involving two employees where underpayments occurred.[8]  In addition, Defendant itself found the errors during a self-audit, prior to service of this lawsuit, and rectified them.  [Doc. No. 108, Ex. 4, Di Paulo Affidavit.]

The Court reviewed a number of cases in which liquidated damages were awarded, including cases cited by Plaintiffs.  For example, in Marshall v. Brunner, 668 F.2d 748 (3d Cir. 1982), relied upon by Plaintiffs, the Third Circuit Court of Appeals held that the trial court erred in refusing to assess liquidated damages against the employer.  That was so because the trial court based its refusal

---

[8]This Court does not underestimate the importance of these errors since the District Court relied, at least in part, on the three errors to find that GAB's actual practice and conduct demonstrated that GAB did not intend to pay the claims reviewers on a salaried basis.  [Doc. No. 106, pp. 9-10.]  However, for purposes of determining the separate question of liquidated damages and whether GAB acted in good faith and upon reasonable grounds that it was complying with the FLSA, this Court determines that these few errors (which comprised .002% of thousands of checks processed by GAB) do not defeat GAB's good faith defense.

on "the factual circumstances surrounding the quantity and quality of the plaintiff's proof in this case" rather than making the required findings concerning the employer's good faith and reasonable grounds for believing it complied with the FLSA.  Id. at 753-54.  Indeed, in Marshall, the trial court previously made the following findings: the employer knew its employees worked more than 40 hours per week but did not pay them the required time and one half; the employer kept no records of hours worked by its employees prior to the Secretary's investigation; following an investigation, the employer began to keep inaccurate time cards for employees; the employer instructed employees that they would not be paid if they did not sign inaccurate time cards; and, the employer continued to take certain actions even after it was advised by the Department of Labor that the Act prohibited such practices.  Id. at 745.  Essentially, there are no parallels to draw between the facts in Marshall, and the matter at hand.  In other words, Marshall does not support a finding that liquidated damages must be assessed under the facts of this case.

Plaintiffs also rely on Renfro.  In that case, the Tenth Circuit held that the district court did not err in awarding liquidated damages.  Renfro, 948 F.2d at 1541.  Specifically, that Court found that the "reasonable grounds" requirement was not met because the only attempt the employer made to determine if it was in compliance with the FLSA was an administrative assistant's single phone-call to someone at the Department of Labor.  Id.  The administrative assistant did not recall the Department employee's position or in what detail she described the employer's policy in question.  Thus, the district court found the employer failed to meet its burden in showing it had reasonable grounds to believe its policy complied with the FLSA.  Id.

The facts in Renfro are significantly distinguishable from the facts in this case.  Here, as stated previously, GAB consulted with experienced FLSA lawyers who were knowledgeable about the

9

administrative exemption.  GAB sought not only to comply with FLSA obligations but prepared written documentation in an effort to demonstrate the plan satisfied requirements of the administrative exemption.  Moreover, the payment plan, as structured, resulted in very few underpayments to employees.  GAB corrected the few underpayments that occurred upon its own volition before Plaintiffs filed this lawsuit.  These circumstances are unlike those examined by the Court in Renfro and similarly distinguishable from the facts in McLaughlin v. Somnograph, Inc., 2005 WL 3489507 at *8 (D. Kan. Dec. 21, 2005), where there was evidence that the employer was repeatedly informed by his attorney that he was in violation of the FLSA and where the employer made random attempts to reach the Department of Labor but could not provide credible verification of the information relayed to the Department employee.  Notwithstanding the attorney's advise, the employer, in McLaughlin, rejected it and failed to pay appropriate time and one-half wages.

Here, the Court concludes that Defendant satisfied its burden in demonstrating it had the honest intention to ascertain and follow the dictates of the FLSA and that it acted in good faith in structuring the payment plans that were at issue in this case.  The Court further determines that the reasoning applied by the Honorable Bruce Black, in Garcia, supports this conclusion.

In Garcia, the district court observed that "[w]hen an employer fails to consult a lawyer or other expert and cannot demonstrate a reasonable basis for its interpretation of the Act, it may be responsible for liquidated damages." Garcia, 167 F. Supp. 2d at 1316.  However, in Garcia, like this case, the employer's efforts to consult with experts and lawyers and the employer's reliance on the advice given indicate that the employer acted in good faith and upon reasonable grounds, and "even assuming en arguendo that its plan violated the overtime provisions of the Act, that the violation was not wilful."  Id.

10

Based on the advice of counsel and experts, GAB had reasonable grounds for believing its payment plan complied with the Act. The fact that the plan failed to comply with the FLSA, when GAB made improper deductions to salaries on three occasions, does not defeat a finding that GAB honestly attempted to comply with the FLSA and had objective grounds to believe it had so complied. Therefore, the Court recommends that Plaintiff's request for liquidated damages be denied.

## ATTORNEY'S FEES, COSTS AND INTEREST

### I.      PLAINTIFFS' APPLICATION FOR FEES

Plaintiffs' out-of-state and local counsel, of which there are eight who participated in litigating this matter, along with one paralegal, seek a total award of attorney's fees of $920,196.25, through June 17, 2005, over four times the amount of damages awarded to Plaintiffs. The approximate number of hours billed by all Plaintiffs' attorneys and their paralegal is 3273 hours (through mid-June 2005). The requested hourly billing rates for counsel vary from $275.00/hour to $500.00/hour. The billing rate for local counsel's paralegal is $165.00/hour. The three Plaintiffs' law firms involved (Fieschko, Branch and Woods) also seek an award of costs totaling $21,990.42.

Defendant argues that some of Plaintiffs' attorneys' hourly rates are not reasonable and that the number of hours spent on this matter also is not reasonable. In addition, Defendant contends, *inter alia*, that the attorney's fee award should be reduced to reflect work on successful as opposed to unsuccessful theories and motions. In sum, Defendant asserts that Plaintiffs' attorneys should not receive any more than $420,973.34 in attorney's fees. Defendant's response brief sets forth in detail its arguments underlying the proposed reductions.

11

## II.   __ATTORNEY'S FEES – LEGAL STANDARD__

Title 29 U.S.C. 216(b) provides that the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" in addition to a judgment awarded to the plaintiffs. In determining the award of attorney's fees, the court employs the analytical framework used in civil rights cases under 42 U.S.C. § 1988.  *See* Ayers v. 127 Restaurant Corp. v. 127 Restaurant Corp., 1999 WL 328348 at *1 (S.D.N.Y. May 21, 1999) ("the law on attorney's fees is no different in FLSA cases than it is in employment discrimination cases"), *aff'd*, 201 F.3d 430 (2d Cir. 1999) (table).  *See also* Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983) ("The standards set forth in this opinion [construing § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'")

There is no dispute that Plaintiffs are "prevailing parties."  *See* Hensley, 461 U.S. at 433 (a plaintiff who "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" is a "prevailing party") (internal quotation omitted).  Therefore, the Court must determine what constitutes a reasonable fee in this litigation.

The starting point for determining the amount of a reasonable fee is to calculate the number of hours reasonably expended (by attorneys or paralegals) on the litigation and to multiply that number by a reasonable hourly rate.  Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), *criticized on other grounds by* Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987).  The resulting figure is referred to as the "lodestar" amount.  Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1988).

Plaintiffs bear the burden of establishing entitlement to an attorneys' fee award, documenting the appropriate hours expended, and showing that the hours claimed are reasonable.  Id. at 1249-50.

12

In other words, Plaintiffs' attorneys must "prove and establish the reasonableness of each dollar, each hour, above zero." Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995) (citation omitted). The Tenth Circuit imposes an important responsibility on attorneys who seek attorneys' fees:

> [The attorneys] must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks-for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint and so on.

Ramos, 713 F.2d at 553.

Nearly all of the time sheets Plaintiffs submitted violate the Tenth Circuit's admonitions in Jane L. and Ramos, where the Circuit stressed the importance of meticulous records that reveal how time is allocated to specific tasks. For one thing, the time sheets in this case are replete with block billing, that is, "lumping" multiple tasks into one time entry.

While block billing is not *per se* forbidden, Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000), it makes it difficult, if not impossible, for the Court to determine if the time billed by counsel for individual tasks was reasonable. When there is extensive block billing as there is here, one of three options is available to the reviewing court: 1) accept as reasonable all of the time sheets, even though counsel did not "prove and establish [the] reasonableness of each dollar, each hour above zero" (Jane L., 61 F.3d at 1510); 2) reject all of the time sheets even though counsel performed legal services for the plaintiffs and ultimately prevailed; or 3) reduce the fee request. Indeed, courts may significantly discount requested attorney hours if the attorney fails to keep the required records or if the records are sloppy and imprecise. Cadena, 224 F.3d at 1215; Jane L., 61 F.3d at 1510.

13

Of these three options, the Court rejects the first as untenable. The Court has, after all, an independent obligation to determine reasonableness. *See e.g.,* Hensley, 461 U.S. at 433, 434; Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1257 (10th Cir. 2005) (court "not required to accept the fee applicant's billing judgment uncritically"); Robinson v. City of Edmond, 160 F.3d 1275, 1279-80 (1998)[9]; Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1202 (10th Cir. 1998); Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996). The Court similarly rejects the second option as unfair. Plaintiffs' counsel zealously pursued a claim on behalf of their clients and ultimately prevailed. Thus, they should receive reasonable fees for the services performed. In this case, the Court will utilize the third option, reduction of claimed fees, because it strikes an appropriate balance between the extremes.

The Tenth Circuit also recognizes that attorneys typically do not bill a client for every hour expended in litigation, and that attorneys should exercise "billing judgment" regarding the amount of hours actually billed. To show appropriate billing judgment, an attorney should make a good-faith effort to exclude those hours from the request that are excessive, redundant or otherwise unnecessary. *See, e.g.,* Ellis, 163 F.3d at 1202 (court is obligated to exclude hours "not reasonably expended" from the attorney fee calculation).

In analyzing what hours are "reasonably" expended on specific tasks, the court may consider such factors as the "complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." Case, 157 F.3d at 1250. The Court also may examine whether the hours that were expended constituted a duplication of efforts by other

---

[9]The Court recognizes that the Tenth Circuit, in Robinson, noted that the magnitude of the costs cut to unchallenged portions of a fee application is a factor to consider in whether the trial court abused its discretion. 160 F.3d at 1286.

attorneys.  "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time."  Id. (*quoting* Ramos, 713 F.2d at 554)).  In making this determination, the court can look to how many attorneys the other side utilized in similar situations.  Id.

The Court may accept the lodestar proposed by a plaintiff as the reasonable amount to award or it may adjust the lodestar upward or downward, depending on the circumstances of the case.  *See* Ramos, 713 F.2d at 552-55.  In reducing the lodestar, the Court may elect to discount requested fees by specific billing entry/hour or by making a general reduction of hours "to achieve what the court determines to be a reasonable number."  Case, 157 F.3d at 1250 (internal citation omitted); Hensley. 461 U.S. at 436-37 ("no precise rule or formula" required for determining attorney fee awarded to prevailing party).

### A.    Hourly Rates

In setting a reasonable hourly rate, the court looks to "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."  Case, 157 F.3d at 1256; *see also* Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984) (reasonable hourly rate comports with rates "prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation").  In setting a reasonable hourly rate, the Court should look to the local area.  Rates, both higher and lower, that are billed in other parts of the country may be considered but are not controlling as different economic factors and costs of living invalidate direct comparisons.

The party requesting the fees bears the burden of showing that the requested rates are consistent with those prevailing in the community.  United Phosphorus, Ltd. v. Midland Fumigant,

Inc., 205 F.3d 1219, 1234 (10th Cir. 2000).  In other words, the fee applicant must show by "satisfactory evidence--in addition to the attorney's own affidavits" – that the requested hourly rates are the prevailing market rates.  Blum, 465 U.S. at 896 n. 11.

### Joseph E. Fieschko, Jr.

Plaintiffs' attorney Joseph E. Fieschko, Jr. (Pennsylvania) billed approximately 1288.3 hours at a rate of $300 per hour.  In his affidavit, Mr. Fieschko stated that his standard billing rate in overtime litigation cases is at least $300 hour, and he identified a list of cases for which he billed that hourly rate (all of which were filed in Pennsylvania federal courts).  No New Mexico court has previously awarded Mr. Fieschko fees in that range.  Mr. Fieschko states that he has "a good reputation in the area of litigating overtime claims under the FLSA" and that he has been a speaker on the FLSA on numerous occasions.  He surveyed his peers and determined that his billing rate of $300.00 per hour is commensurate with other attorneys of his stature.

Mr. Fieschko fails to provide information of his years of legal experience or any supporting affidavit testimony regarding what the prevailing market rate is in this community for similar services. He further fails to explain why market rates applicable in the Eastern United States should be used in this district.  Notwithstanding these failures, the Court recognizes that Mr. Fieschko has developed an expertise in FLSA litigation and that he has billed at the rate of $300.00 per hour for other FLSA litigation.  While Mr. Fieschko bills at $300 per hour, he did not provide evidence that any court has found that $300.00/hour is a reasonable rate.  Therefore, the Court proposes to modify the requested rate and find that $290.00/hour is reasonable based on the Court's own familiarity with the rates prevailing in this district for work performed by an attorney of Mr. Fieschko's expertise.

**Dave Woods**

Plaintiff's attorney Dave Woods (New Jersey) billed approximately 99 hours through February 2002, at which time the Branch Law Firm substituted its appearance for that of Woods.  Mr. Woods provided affidavit testimony that his normal billing rate is $275.00 an hour and that a survey of his peers supports that hourly rate.  Mr. Woods states that he is an experienced attorney and a partner of a New Jersey law firm.  He does not contend, as does Mr. Fieschko, that he has developed an expertise in FLSA litigation, is a speaker or presenter on FLSA seminars, or has been awarded fees of $275.00 per hour by any court.  Mr. Woods has approximately 25 years of legal experience.[10]  He provides no evidence or other affidavit testimony as to what hourly rates are in line with those prevailing in this community.  However, the Court concludes that an hourly rate of $250.00 is more in line with rates for similar services by attorneys with comparable skill and experience practicing in this district.[11]

**Turner Branch**

Turner Branch submitted billings for about 213 hours at an hourly rate of $500.00.  His attached affidavit states that $500.00 per hour is his normal billing rate and that in surveying his peers,

---

[10]Plaintiffs' attorneys' affidavits, to they extent they were submitted, provide no background information regarding years of experience.  Thus, in order to find some guidance for determining the reasonableness of the attorney's hourly rates, the Court consulted Martindale-Hubbell to obtain the date of each attorney's admittance to the Bar.  *See* Fed. R. Evid. 201(b) (court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")  While the Court generally would not take judicial notice of information contained in a commercial treatise, in this case, where Plaintiffs have provided so little basic information, the Court will take judicial notice of the attorneys' dates of bar admission.

[11]*See* Christopher Graham, et al. v. Vengroff, Williams & Associates, Inc., No. CIV 02-369 MV/RLP (D.N.M. Nov. 4, 2004), where Chief Judge Martha Vazquez awarded hourly rate of $225.00 for attorney with 30 years experience [doc. 92], and Ben Lewis, et al. v. New Mexico Department of Health, No. CIV 99-21 MV/JHG, where Chief Judge Vazquez awarded hourly rates of $250.00 for attorney with 25 years experience, $225.00 for attorney with 20 years experience, and $175.00 for attorney with 17 years experience.  (D.N.M. Jan. 5, 2005) [doc. 230].

he determined that $500/hour is reasonable, and "actually slightly below average for attorneys of my status practicing in this area of the law."  He is an AV-rated attorney and has served on boards of legal associations.  So, too, Mr. Branch has received awards in the legal field, written over 200 published articles, and tried more than 200 jury trials to verdict.

Other than to summarily state that he surveyed his peers as to the prevailing market rate, Mr. Branch provides no evidence or affidavit testimony regarding the prevailing market rates of his peers in this district for work performed.  *Compare* Theno v. Tonganoxie Unified School District No. 464, 464 __ F. Supp. 2d ___, 2005 WL 3434016 at *4 (D. Kan. Dec. 13, 2005) (fee applicant supplied four affidavits from attorneys who opined the requested hourly rate of $250/hour was in line with the prevailing market rate for attorneys in the Kansas City metropolitan area); Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004) (remanding for review of hourly rate where fee applicant supplied five other attorneys' affidavits attesting to the reasonableness of a $400 or $450 hourly fee).  Moreover, Mr. Branch does not supply affidavit testimony that any court has awarded him an hourly rate of $500.00 or determined that his requested hourly rate of $500.00 was reasonable.

Defendant argues that Turner Branch's hourly rate of $500 is unreasonable when compared to the rate of compensation charged by New Mexico attorneys of similar experience and skill.  It is beyond dispute that Mr. Branch is a highly successful and respected attorney.  However, there is simply no evidence presented from which the Court can conclude that Mr. Branch and his peers have been awarded fees in the requested range.

Defendant observes that Mr. Branch's proposed hourly rate exceeds the rates charged by Plaintiffs' out-of-state counsels' rate by $200 to $225 per hour.  Based on Fieschko's affidavit, he is one of the few attorneys in the nation who handles similar FLSA collective action litigation, yet his

rate is $200.00 per hour less than that sought by Mr. Branch. Defendant suggests that Mr. Branch's rate should be reduced to $325.00 per hour, more in line with that of Attorney Stowers who is a highly skilled attorney as well as a seasoned trial judge, Supreme Court Justice and Chief Justice of the State Supreme Court.

The Court agrees that an hourly rate of $500.00 is not commensurate with fees charged by other attorneys in this market. Moreover, while Mr. Branch may bill his clients at the $500.00 per hour rate, there is no evidence demonstrating that any court has found that fee reasonable. On the other hand, the Court rejects the argument that Mr. Branch's fees be set at the same rate as Attorney Stowers. After all, Mr. Branch is the founding partner of his law firm and is entitled to bill at a rate greater than that of his partners, associates or of counsel. The Court determines that the rate of $350.00 per hour is commensurate with a reasonable rate for attorneys with Mr. Branch's experience and reputation. Thus, the Court recommends that Mr. Branch's hourly rate be set at $350.00.

### *James Noel, Clyde DeMersseman, Robert Bliss, Brian Brack (Branch Associates)*

The Branch Law Firm utilized the work of four associate attorneys, James Noel (948.5 hours), Clyde DeMersseman (98.25 hours), Robert Bliss (68.3 hours) and Brian Brack (3.7 hours). None of the Branch associate attorneys submitted separate affidavits supporting their fee requests. Instead, Turner Branch's affidavit states that Mr. Branch determined $275.00 is a reasonable hourly fee for each of the four associates. No additional information is provided as to these attorneys' legal experience or qualifications.

Defendant does not object to the proposed hourly rate of $275 for each of the four Branch associates. However, the Court has an independent obligation to ensure that the requested hourly rates and fees are reasonable. *See* Robinson, 160 F.3d at 1285-86 (court has discretion to reduce fee

19

even where parties have not placed fee request in controversy); *see also* <u>Hensley</u>, 461 U.S. at 433, 434 (court has a duty to independently review request for fees and expenses); <u>Olenhouse v. Commodity Credit Corp.</u>, 922 F. Supp. 489, 494 (D. Kan. 1996) (EAJA fee case, observing that a court must still review reasonableness of fees even if there is lack of opposition).

Moreover, as stated *supra*, the fee applicant bears the burden of demonstrating with "satisfactory evidence – in addition to the attorney's own affidavits" that the requested fee rate is reasonable. None of the four attorneys supplied their own affidavits, nor were any other affidavits (besides that of Mr. Branch) or evidence provided as to the reasonableness of their proposed hourly rates. Indeed, the attorneys failed to provide the Court with the information concerning their years of practice, bar memberships, honors or awards, or any evidence that courts have found that their billing rates are reasonable or have awarded fees at the requested rates.

Based on current information from the <u>Martindale-Hubbell Law Directory</u>, Mr. DeMersseman was first admitted to the Bar in 1994, and Mr. Brack was first admitted to the Bar in 1993. Mr. DeMersseman recently was appointed as a Metropolitan Court Civil Judge. The Court determines that an hourly rate of $200.00 is consistent with the local market rate for attorneys with Mssrs. DeMersseman and Brack's skill and experience. Therefore the Court recommends that their hourly rate be set at $200.00.[12]

---

[12]In <u>Christopher Graham, et al. v. Vengroff, Williams & Associates, Inc.</u>, No. CIV 02-369 MV/RLP (D.N.M. Nov. 4, 2004), Chief Judge Martha Vazquez awarded the plaintiffs' local class action counsel $225.00 an hour. The attorney had thirty years experience, had developed specialized skills in consumer litigation, and was a frequent speaker and presenter at consumer rights/consumer litigation seminars. Out-of-state (Chicago) counsel, who specialized in consumer protection class actions, requested $325.00 an hour. Judge Vazquez reduced his requested fee rate to $250.00, reasoning that since the plaintiffs' local attorneys had a reasonably comparable degree of experience and specialization, out-of-state counsel's fee should be awarded at the local market rate of $225.00 per hour, plus a small premium for his specific experience, for a total hourly rate of $250.00. [Doc. 92]

Plaintiffs seek the same hourly rate of $275.00 for associates Bliss and Noel, even though Noel was first admitted to the Bar in 2000 and Bliss was admitted recently in 2004. In other words, the requested rates are for attorneys with only six years or one year of practice. The Court concludes that an hourly rate of $185.00 is consistent with the local market rate for attorneys with Mr. Noel's experience, and that an hourly rate of $145.00 is consistent with the local market rate for attorneys with Mr. Bliss's brief legal experience. Therefore, the court recommends that Mr. Noel's hourly rate be set at $185.00 and Mr. Bliss's hourly rate be set at $145.00. *See* footnotes 11 and 12 (discussing experienced attorneys' hourly rates).

### *Harry Stowers, Jr. (Of Counsel at Branch Law Firm)*

Harry Stowers, Jr., who was of counsel at the Branch Law Firm billed 4.5 hours at an hourly rate of $325.00. Mr. Stowers has extensive experience as a trial court judge, Justice of the Supreme Court and as Chief Justice of the New Mexico Supreme Court. He provided no affidavit testimony with respect to his billings or proposed hourly rate. Defendant does not object to his proposed hourly rate of $325.00. The Court concludes, based on Attorney Stowers' extensive legal experience and the Court's own familiarity with the rates prevailing in this district, that Attorney Stowers' hourly rate is reasonable. Thus, it recommends that Mr. Stowers' hourly rate of $325.00 be accepted.

### *Shariesse McCannon (Branch Paralegal)*

Mr. Branch submitted his own affidavit stating that his paralegal, Shariesse McCannon's hourly fee of $165.00 was reasonable. She billed approximately 548 hours. Ms. McCannon did not provide any affidavit testimony of her own in support of the fee application, nor any evidence that any court has found that to be a reasonable rate. No other affidavits or evidence were provided regarding the prevailing market rate in this district for comparable work done by a paralegal. Moreover, Mr.

Branch's affidavit does not provide information regarding how long Ms. McCannon has worked as a paralegal, or any additional description of her legal experience.

Even though Defendant does not object to the proposed hourly rate of $165 for Ms. McCannon, the Court has an independent obligation to determine whether the proposed hourly rate is reasonable. Hensley, 461 U.S. at 433, 434 (court has a duty to independently review request for fees and expenses); Olenhouse v. Commodity Credit Corp., 922 F. Supp. 489, 494 (D. Kan. 1996) (EAJA fee case, observing that a court must still review fees even if there is lack of opposition). In examining hourly rates of paralegals outside this district, paralegals in significantly larger metropolitan areas billed and were awarded closer to $65-$115 an hour. *See, e.g.,* Navarro v. General Nutrition Systems, 2005 WL 2333803 at *11 (N.D.Ca. Sept. 22, 2005) (awarding paralegal hourly rate of $65 while observing that rate was below the prevailing market rate in the San Francisco urban area); Access 4 All, Inc. v. Park Lane Hotel, Inc., 2005 WL 3338555 at *5 (S.D.N.Y. Dec. 7, 2005) (hourly rate of $115 for paralegal in ADA case approved); Garden City Boxing Club, Inc. v. Salcedo, 2005 WL 2898233 at *3 (S.D.N.Y. Nov. 3, 2005) (apparently accepting paralegal's hourly rate of $75.00, although reducing billing hours); Blackman v. District of Columbia, 397 F. Supp. 2d 12 (D.D.C. 2005) (hourly rate of $90/hour for paralegal services not excessive in class action case); Velasquez v. Khan, 2005 WL 2397058 at *3 (E.D. Ca. Sept. 28, 2005) (paralegal requested and awarded hourly rate of $100).

This Court recognizes that it must examine the prevailing market rates for paralegals in this locale. However, it is clear that paralegals' hourly rates in the Albuquerque area typically would not exceed those of paralegals who work in the New York City area or San Francisco. Moreover, Ms. McCannon's requested hourly rate of $165 is substantially more than some associate attorneys bill

22

and/or are awarded.  Based on the Court's own familiarity with the rates prevailing in this district for comparable work by a paralegal (along with the fact that Plaintiffs supplied no evidence as to Ms. McCannon's legal experience), the Court proposes that an hourly rate of $85.00 is reasonable.[13] *Compare* Graham v. Vengroff, Williams & Assoc., Inc., No. CIV 02-369 at *4 MV/RLP (D.N.M. Nov. 4 2004) (in class action litigation, paralegal's requested hourly rate of $35 was deemed reasonable by Chief Judge Martha Vazquez.  It was found consistent with the market rate for paralegal work in this area).

### B.   Hours Expended

The party moving for fees bears the burden of documenting the appropriate hours expended. Case, 157 F.3d at 1249.  The Court will reduce the hours claimed if the attorneys' records are not sufficiently meticulous, fail to precisely document the time necessary to complete specific tasks, utilize improper "block building," and/or fail to demonstrate that the attorneys exercised "billing judgment." Id. at 1250.  *See also* Robinson, 160 F.3d at 1285 n. 9 (defining "block billing").

Plaintiffs' fee application argues that their time records are meticulous and proper.  They further contend that "virtually no time [was] wasted in this case."  Plaintiffs also explain this case involved over forty depositions, the production and examination of thousands of documents, travel to several different areas of the country, and preparation of several briefs, which involved complex and unique questions of law.

---

[13]In 2004, the New Mexico Bar Association conducted a state-wide survey on paralegal compensation and utilization.  *See* http://www.nmbar.org/Content/NavigationMenu/Divisions_Sections_Committees/Divi-sions/Paralegals_Legal_Assistants/News_and_Trends/ParalegalSurveyReport.pdf  It included hourly billing rates.  Of 201 paralegals queried, 22 (00.49%) billed between $20.00 and $40.00 per hour; 57 (28.35%) had hourly billing rates between $40.00 and $60.00; 81 (40.29%) billed between $60 and $80.00 per hour; 40 (19.90%) billed more than $80.00 per hour.  This summary shows that over 80% of New Mexico's paralegals bill $80.00/hour or less.  It is also noted that the survey capped the billing rate at "over $80.00 per hour" and did not ask if any paralegal billing rates exceeded $100.00 per hour.

Defendant argues that Plaintiffs' success was limited and that Plaintiffs' fee application should be reduced accordingly.  For example, GAB notes that Plaintiff's lost on GAB's motion to change venue, lost several discovery-related disputes, and lost at summary judgment as to the claims of Task Order II claim reviewers.  Thus, Defendant asks that the Court deduct 75% of the cost and time expended on depositions and 75% of the cost and time expended on summary judgment.

GAB also challenges the fee application on grounds that a significant portion of the time records are "imprecise," reflect duplicative legal services, inflate the time necessary to complete certain tasks and involve administrative or clerical services that should not be included in the fee application.

The Court agrees that the hours of billable work submitted by Plaintiffs must be reduced for a number of reasons.  The Court sets forth examples of these billings below and the reasons they are improper or warrant reductions.

### *Fieschko Billings* [Doc. No. 107, Ex. A.]

Mr. Fieschko billed a total of 1288.3 hours.  However, his billing records leave much to be desired.  They are vague and imprecise.  The time entries are replete with block billing.

For example, Fieschko billed 5.5 hours to "put game plan together and letter to Atty. Woods" on 1/26/01.  The Court cannot ascertain how much time was spent on the letter to Attorney Woods, and the "game plan" entry is imprecise at best.  Without more detail, it is difficult to ascertain if the time spent on the "game plan" is reasonable.  Fieschko billed 3.2 hours on May 2, 2001 for "draft[ing] complaint; tel. conf. w/Ellison; tel. conf. w/Woods."  Were these two quick calls that lasted only five or ten minutes?  Was the bulk of the time spent drafting a pleading?  These are examples of block billing that are disfavored, and unfortunately, most of Mr Fieschko's time sheets consist of "block

billing." *See, e.g.,* entries on 5/16/01, 7/16/01, 8/8/01, 8/13/01, 8/22/01, 8/28/01, 2/19/02, 3/11/02, 2/14/02, 3/20/02.[14]

Many of Fieschko's billing entries are imprecise, if not reflective of clerical tasks. For example, Fieschko billed 1.2 hours on 1/30/01 to "put together mailings." As stated, this task sounds clerical in nature, and attorney time of $290.00 per hour to perform routine clerical tasks is unreasonable. It is also possible that the entry relates to drafting letters, and if so, the time is reasonable. It was Fieschko's responsibility to justify this time. On May 22, 2001, he billed 5.5 hours for "corrected notice." The entry is vague. Moreover, it is hard to imagine what "notice" took 5.5 hours to correct. On June 12, 2001, Fieschko billed 2.1 hours to "put together form letters," another entry that, without more, sounds clerical in nature. If so, $290.00 per hour of attorney time should not be billed. On September 28, 2002, Fieschko billed .3 for "Ellison Tw Branch Flight Schedule," an entry that again sounds like clerical scheduling of flights. The June 24, 2002 entry for "phone calls and travel arrangements for S.C. depos" for which he billed 1.8 hours appears clerical in nature. *See also* 10/28/02 ("fixed addresses database"). Some of these tasks should likely be absorbed into law office overhead or performed by support staff. It is unreasonable, for example, to bill the opposing party $290 an hour to make travel arrangements when administrative support staff could perform that task at minimal cost.

Fieschko lists dozens of telephone conferences without giving any idea of the content of those discussions. *See, e.g.,* entries of 5/3/01, 5/16/01, 5/21/01, 5/31/01, 8/3/01, 9/19/01, 10/10/01,

---

[14]These are only a few examples out of numerous entries that consist of "block billing."

10/11/01, 9/12/02, 8/20/02, 8/15/02.[15]  In addition to the dozens of references to telephone calls, Mr.

Fieschko more often than not bills his calls in one-half to three-quarter hour segments.  This is not

a normal law office billing practice where calls are generally billed in tenth of an hour or quarter hour

increments.  Fieschko's billing records are replete with vague and imprecise billing descriptions.  For

example, he bills 3.1 hours on March 12, 2002 for a telephone conference and "long letter."  The

entry does not describe what the letter concerned or why a telephone call would last so long.  On

March 19, 2002, he bills 16.1 hours for "travel and meetings and research."  The entry is improper

block billing for one thing, and imprecise as to what topic he researched or what the meetings were

about.  Additionally, travel time should not be billed at an attorney's normal billing rate for legal

services.  *See* Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1077 (10th Cir. 1998) (district court did

not abuse its discretion in awarding $50/hour for attorney's travel time).

Other examples of imprecise and vague billing entries are: 7/7/02 (6.5 hours for "travel &

depo prep"); 9/2/02 (1.1 hours for "record report for Krodtion"); 8/28/02 (8.2 hours for "review

file/org file/verify opt in T/ to Sanchez Goldman); 9/7/02 (3.2 hours for "reading Hubbard Depo &");

11/7/02 (4.2 hours for "review doc from Hall"); 11/7/02 (1.1. hours for "review Werptney and spoke

to him"); 11/10/02 (2.1 hours for "prepare papers depo"); 1/29/03 (1.8 hours for "transcript").  *See*

Nieto, et al. v. Kapoor, No. CIV 96-1225 MV/JHG (D.N.M. June 12, 2001) [Doc. 397] (fee

applicant not required to record "in great detail each minute of his time" . . . "but at least counsel

---

[15]Again, these are just a few of many, many vague and imprecise entries.  In addition, the entries are not
always in chronological order, thus making the Court's task of reviewing the entries more difficult.  *See, e.g.,* p. 3
of Ex. A.]  The fact that the bills are not in chronological order raises the inference that the records are not being
contemporaneously kept.

should identify the general subject matter of his time expenditure") (*citing* <u>Hensley</u>, 461 U.S. at 437 n. 12.)

On December 8, 2002, Fieschko billed 10.2 hours for "file review/pick Noel up Airport/Meet with class members." Part of the entry appears administrative in nature. Also, Fieschko's continued billing for "file review" for significant periods of time is suspect and of little help in determining whether he reasonably expended time on specific and necessary tasks.

On February 24, 2003, Fieschko billed 5. 2 hours for "Paper & Participatin A Motion to ?,"an entry that is nonsensical. On November 24, 2004, he spent 4.4 hours on "Perry Smith brief," but the Court does not know what brief is being prepared or if Fieschko is researching or writing the brief.[16] On 8/31/04 and 9/1/04, Fieschko billed 12 hours each day for "brief". Nothing describes what the brief is or what Fieschko was doing on the brief.

Rather than Mr. Fieschko's billings being "meticulous and proper" as he argues, in many instances they are neither. For example, Fieschko improperly billed in this case for work being performed in three other separate cases filed in this district. Because of his extremely imprecise billing descriptions, it is difficult to discern exactly which cases he is billing for, yet it is clear that he billed for work in <u>Harp v. GAB</u>, 03cv937 WL/RLP, <u>Strickland v. GAB</u>, 03cv994 MCA/DJS, and <u>Altier v. GAB</u>, 03cv1055 MCA/WDS, all separately filed cases, pending before other federal judges in this district. *See, e.g.,* Fieschko entries concerning Harp, Strickland and Altier beginning in June 2003 and continuing periodically through December 2003. It is improper, of course, to bill

---

[16]It is significant that the Court cannot determine what briefs are being written since a number of attorneys, including Fieschko, improperly billed in this case for work being performed in other cases.

Defendants in this case for work Plaintiffs' attorneys did in other cases.  Yet, that is exactly what the time sheets show.

In sum, a significant number of Mr. Fieschko's billing demonstrate that he has not "proven and establish[ed] [the] reasonableness of each dollar, each hour, above zero." Jane L., 61 F.3d at 1510.  To the contrary, the time maintenance process used by Mr. Fieschko is vague and imprecise. Mr. Fieschko has not provided time sheets that allow the Court to determine with a sense of confidence that the time claimed is reasonable. *See, e.g.,* In re Espy (Townsend Fee Application), 346 F.3d 199, 204 (D.C. Cir. 2003) ("[I]nadequate documentation makes it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task.").  Stated differently, Mr. Fieschko fails to provide sufficient detail so that the Court can make a fair evaluation of the time expended and the nature and need for the service. *See* Hensley, 461 U.S. at 441 (Burger, C.J., concurring) ("the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed"); RoleModels America, Inc. v. Brownlee , 353 F.3d 962, 972 (D.C. Cir. 2004) ("because the time records contain so little information, we have no basis for concluding that hours that appear to be excessive and redundant are in fact anything other than excessive and redundant").

Mr. Fieschko billed a huge number of hours, 1288.3.  At the revised hourly rate of $290.00/hour, the total amount billed would be $ 373,607.  Based on the many inadequate and imprecise billing entries submitted, however, Fieschko's fails to satisfy his burden of showing that the hours expended were reasonable.  Moreover, many of the time entries are inflated and unreasonable. The time entries for work performed on other cases are simply improper.  Thus, the Court

recommends that 50% of Mr. Fieschko's 1288.3 hours be reduced.  Accordingly, the total hours billed would be reduced to 644.15 multiplied by $290/hour = $<u>186,803.50</u>.

**Dave Woods Billings** [Doc. No. 107, Ex. A.]

Attorney Woods worked on this case with Fieschko until approximately the time the case was transferred to the District of New Mexico.  It appears that Woods served primarily as local counsel in the District where the complaint was first filed.  Thus, Woods worked with Fieschko on the initial complaint, and to some extent on the motion to transfer venue.  Woods billed a total of 99.2 hours between January 24, 2001 and February 28, 2002.  His billing entries are more precise than Fieschko's.  However, they reveal a significant amount of overlap and duplication of work.

For example, the complaint that was filed in this case contained three pages with a total of 16 paragraphs.[17]  It appears that Fieschko billed at least 9.3 hours in relation to the complaint which is certainly reasonable.  *See, e.g.,* Fieschko entries of 5/2/01, 5/3/01, 5/16/01, 5/16/01, 5/18/01, 6/5/01.  However, Woods billed the following additional time related to the complaint:

5/7/01: receipt and review of draft complaint  .5
5/7/01: correspondence to Fieschko   .25
5/7/01: Telephone conference with co-counsel re: changes to complaint: .35
5/9/01: Receipt and review of proposed complaint  .30
5/16/01: telephone conference with co-counsel (Fieschko) re: filing  .35
5/17/01: Receipt and review of correspondence from Fieschko re: revised complaint  .75
5/18/01: Telephone conference with opposing counsel (Fieschko) re: complaint .50
5/18/0: Telephone conference with counsel (Fieschko) re: jury demand, venue .50
5/21/01: Revise complaint  .75
5/31/01: Telephone conference with co-counsel (Fieschko) re: progress of notices and filing of
              complaint  .35
6/11/01: Telephone conference with opposing counsel re: changes to advertisement and complaint
              .40
6/11/01: Receipt and review of correspondence from opposing counsel re: revised complaint  .40
6/11/01: Preparation of federal case information statement  .50

---

[17]The complaint does contain a number of legal citations.

29

6/11/01  Receipt and review of correspondence from co-counsel with further modified notice and complaint   .35

6/11/01  Receipt and review of correspondence from co-counsel re: filing of complaint – 85 prospective plaintiffs  .30

6/12/01  Receipt and review of correspondence from co-counsel with original modified notice and complaint  .35

6/12/01  Travel to and from Newark to file complaint   1.50

6/12/01  Appearance in U.S.D.C. to file complaint  .75

6/12/01  Telephone conference with counsel re: filed complaint  .30

6/15/01  Telephone conference with co-counsel re: allocation to Judge Bassler and civil action number  .25

Thus, Woods billed about 9 ½ hours in reviewing, discussing, revising, and filing the complaint.  It is difficult to fathom that two attorneys were required to spend over 18 hours drafting and filing this short complaint, especially in light of the fact that Attorney Fieschko is skilled in FLSA litigation and does not have to "start from scratch."   Moreover, it is difficult to believe that the two experienced and FLSA skilled attorneys needed to confer by telephone over this complaint for the many hours they state.  In other words, the billings appear inflated for the tasks performed.

Another example of unreasonable billing relates to the preparation of a *pro hac* vice motion for Fieschko.  This is a standard, straightforward pleading.  Indeed, the preliminary draft is likely part of any lawyer's "boilerplate" forms, or is generally prepared by a paralegal.  Yet, on May 9, 2001, Woods spent .90 on the task.  Again, on September 6, 2001, Woods billed .75 to prepare final draft of *pro hac* order for Fieschko and Zatkos.  On 9/24/01, Woods billed .20 for correspondence to Fieschko re: *pro hac vice*.   On 9/29/01 and 10/1/01, he billed for another hour relating to correspondence regarding *pro hac vice* issues.  This is excessive billing for the task accomplished.

Yet another example of duplication of efforts concerns the response to Defendant's motion to transfer venue.  It appears that Fieschko was primarily responsible for drafting the opposition brief.  He billed about 18 ½ hours on it.  Woods then billed almost 24 hours on it.  *See* billing entries

30

10/9/01, 10/10/01, 10/11/01, 10/12/01, 10/15/01, 10/16/01.[18]  Fieschko spent 1.2 hours reviewing Defendant's reply brief, while Woods billed another 2.5 hours to review it.  The total amount of time spent on the venue brief appears excessive.

Woods' billings also reveal billing entries for clerical tasks that should not be billed at an attorney's rate.  For example, he billed an hour and a half to travel to Newark to file the complaint and almost an hour to appear in court to file the complaint.  This is a task generally performed by a "runner" or at least, a lower paid administrative support staffer.  Moreover, filing a complaint with the court clerk is hardly "an appearance in USDC" that compels this hourly rate.  Woods also billed for the preparation of a summons and order appointing the process server and for telephone conferences with the clerk of the court regarding problems with the summons.  These tasks, while necessary, should not be billed at attorney rates.  A significant chunk of time was billed relating to the receipt and review of the service of process upon GAB.  Woods billed over an hour relating to service of process.  All of these types of billings are more properly allotted to clerical or administrative time.

In addition, Woods billed for some tasks that might be considered marketing costs for the firm, although the imprecision of the entries makes it difficult to understand the tasks that were being performed.  For example, on 4/5/01, Woods billed .40 for review of correspondence from co-counsel re: status of project and "CLE material".  On 5/2 and 5/3/02, he billed over two hours for work related to requirements of the "advertising committee."  Presumably, Woods was determining how the firm could bring in more plaintiffs on the same or similar cases.  While marketing efforts are

---

[18]Woods' billing entries do not always identify the topic of the brief.  However, by the dates and the New Jersey Court's docketing statement, it appears that during mid-October 2001, the only brief being prepared was the opposition to the motion to transfer venue.

important and necessary for a law firm, those costs are more properly allotted to the firm's overhead or marketing.

Based on the duplication of effort and unreasonableness of time spent on specific tasks, the Court recommends a reduction of 40% to Mr. Woods' 99.2 billed hours. Thus, the total billed hours, as reduced, are 59.52 hours multiplied by $250 = $14,880.00.

### *Turner Branch Billings* [Doc. No. 107, Ex. A.]

Mr. Branch billed significantly fewer hours (213.5) than Fieschko. Mr. Branch's billing entries, like those of Fieschko, suffer from similar deficiencies.

For example, Mr. Branch excessively billed for the preparation of a form, single-line, single-sentence pleading, an entry of appearance. He billed 1.0 on 2/25/02 for "Branch Law Firm Entry of Appearance." Mr. Noel billed 1.0 on the same single-sentence pleading on the same date for the same entry of appearance. It simply is not reasonable to accept that it took the attorneys a total of two hours to dictate or prepare a one-sentence pleading.[19] The billings in reference to this entry of appearance do not end there.

Fieschko then billed .7 to review the entry of appearance (and letter to Branch) on 2/25/02. It defies credulity to believe that Mr. Fieschko studied, pondered and reviewed this one-sentence pleading for nearly three-quarters of an hour. The preparation of an entry of appearance is more consistent with work performed by paralegals. These billings relating to this entry of appearance are unreasonable and duplicative.

---

[19]The Entry of Appearance [Doc. No. 5], filed February 25, 2002, states: "COMES NOW the BRANCH LAW FIRM (Turner W. Branch and James A. Noel), and hereby enters its appearance in the above-entitled action on behalf of the Plaintiffs."

Mr. Branch and Mr. Noel submit duplicate billing for a number of tasks.  *See, e.g.,* 2/18/05 (Branch bills 1.75 for conversation with Fieschko, and Noel bills 1.5 for same phone conversation); 2/24/02 (both bill for reviewing letter from Fieschko); 1/27/03 (both bill a total of 8.50 hours in finalizing response to a motion to compel).  On February 19, 2005, Branch and Noel submit an almost identical entry: phone conversation with Fieschko, worked with Noel on correspondence, investigated status of case with NM Federal District Court as transferred from NJ.  Branch billed 3.75 hours for this entry, and Noel billed 3.3 hours for the same work.  It is difficult to understand why two attorneys would both need to investigate the status of the case after transfer to this District or why they both would bill for the same telephone conversation.  This is not to say that both attorneys did not perform the work for which they bill, but prudent billing practices and the exercise of professional judgment should prevent that type of double billing.[20]

On March 6, 2002, Branch and Noel both billed for "receipt of J. Garcia's Order for meet & confer, etc. reviewed and scheduled, drafted letters to Fieschko and to Stahl".  Branch billed one hour for this work; Noel billed 1.5 hours for the same work.  Not only is there duplication, but the Court's initial scheduling order is a simple document that sets out basic initial scheduling matters.  It certainly does not require 2 ½ hours of study.  Clearly, both attorneys did not draft the letters, nor should both attorneys bill for these tasks.

On April 5, 2002, Noel billed 5.6 hours on tasks relating to preparing the provisional discovery plan and the IPTR.  Mr. Branch billed another 1.5 hours on that day for similar work.

---

[20]*See, e.g.,* <u>Ben Lewis</u>, No. CIV 99-21 MV/JHG (attorneys' fee application listed the hours for which counsel did not charge and also set forth the attorneys' additional voluntary 5% reduction in their fee request). *Compare to* Turner Branch's Affidavit and billing invoice in this case that neither indicate any hours of work that were not billed nor any voluntary reduction of billings, notwithstanding Mr. Branch's averment that he "used appropriate judgment in evaluating the hours that could appropriately be billed."  [Branch Aff. at ¶ 11.]

Again, pleadings like provisional discovery plans and IPTRs are standard-form pleadings taken from the Court's web site. They do not require the expenditure of many hours of work by two attorneys. Moreover, both attorneys continued to bill time for work on these initial form pleadings.

Branch's billing entries indicate that approximately 15 minutes were required and billed each time Branch reviewed a brief Order or letter from the Court. *See, e.g.,* entries for 3/21/02, 4/18/02 (plus an additional .1 on 4/30/02 to discuss the Court's letter with co-counsel), 5/22/02, 5/23/02, 7/8/03 (or entry with blank date), 3/30/05. These review times by Mr. Branch are far more reasonable than the one-half hour or three-quarter hour review times billed by Mr. Fieschko for the same tasks.

However, Mr. Branch's billings for telephone calls, like those for Mr. Fieschko, are almost never less than 24-36 minutes long. *See, e.g.,* 12/11/02, 9/11/03, 9/12/03, 10/15/03, 2/4/04, 3/10/04, 3/15/04, 7/9/04, 10/25/04, 1/27/05, 5/27/05. Indeed, a number of Branch's billing entries for telephone conversations are significantly longer than .4 or .5. *See, e.g.,* 7/1/03, 7/2/03, 7/7/03, 3/15/04, 9/13/04. Billing in one-half to three-quarter hour increments for telephone calls is substantially higher than the more routine and accepted tenth of an hour or quarter hour practice used by most law firms. It is also sometimes difficult to identify what amount of time was devoted to a telephone call due to the use of block billing. *See, e.g.,* 2/18/02, 4/5/02, 4/10/02, 5/17/02, 3/29/04.

Moreover, Mr. Branch, like Fieschko and Noel, also billed for time in this case for work performed in separately filed cases. In addition to the Strickland, Altier, and Harp cases, Mr. Branch charged for work on one more case, Glukowsky & Fields v. GAB, No. CIV 04-75 WJ/DJS. The time spent on those cases should not be billed to this case. Beginning in August 2003, Mr. Branch billed for work performed on these other cases, totaling at least 30 hours and probably more.

With respect to Mr. Branch's billing entries, the Court concludes that many reflect duplicative and unnecessary work.  In addition, many of the billing entries for review of work and court orders, along with telephone conferences, are unreasonable.  Therefore, the Court proposes that 30% of Mr. Branch's 213.5 billed hours be reduced.  Accordingly, the total amount of hours, as reduced, would be 149.45 multiplied by $350/hour = $52,307.50.

**_James Noel Billings_** [Doc. No. 107, Ex. A.]

Of the five Branch Law Firm attorneys who worked on this case, Noel billed the most hours-- 948.5 hours.  As indicated above, Mr. Noel's time sheets also reflect billings that appear to duplicate some of Mr. Branch's work and other billing entries that are excessive for the task performed.

In addition to duplication of work and billing by Mr. Branch, Mr. Noel duplicated work performed by Justice Harry Stowers, Jr.  For example, on April 15, 2002, Noel billed 2.3 hours to finalize Plaintiffs' initial disclosures.  On the same day, he billed another 1.5 hours for "final touches on initial disclosure documents, met with Stowers on attending the 16b hearing."   Noel billed 2.5 hours to attend the Initial Scheduling Conference and .5 to call Fieschko and update him on that conference.  Similarly, Justice Stowers billed 1.5 hours for "final touches" on the initial disclosures and 2.5 hours to attend the Rule 16 conference and .5 for the follow-up phone call to Fieschko.  Even Branch billed 1.25 for a review of initial disclosures and another .75 to meet with Noel regarding the Rule 16 conference Noel and Stowers attended.

Much of this work is unnecessary duplication of effort.  The Court has no reason to doubt the integrity of the Branch Law Firm attorneys.  Thus, when the Branch attorneys say they spent this amount of time on a task, the Court accepts it.  The issue, however, is whether the time spent was reasonable for the tasks performed.  Additionally, the three attorneys must demonstrate that they

exercised sound billing judgment by billing for work on the same preliminary matters.  *See* Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1257 (10th Cir. 2005) ("The fee applicant should exercise billing judgment with respect to the number of hours worked and billed. . . . Billing judgment consists of winnowing hours actually expended down to hours reasonably expended.") (citations omitted).  The tasks performed simply do not require three attorneys.  In addition, if the two attorneys charged for travel to and from the Rule 16 conference, travel time should not be billed at an attorney's regular rate.

Moreover, it is unlikely that it was necessary for Mr. Noel to spend 42 minutes to review the Court's simple discovery order and order waiving packet submission, yet Noel billed .7 for this review on 4/18/02.  Mr. Branch only billed .25 for reviewing the same Order.  Even though time was spent, prudent billing judgment compels some reduction.

With respect to work on the Initial Pre-Trial Report (IPTR), Noel billed approximately 12.2 hours, although the number is not exact since Noel used block billing in some of the entries.  *See* entries 4/5/02, 4/9/02, 4/10/02, 5/2/02, 5/3/02.  Branch also submitted billings of about 5 hours related, at least in part, to the IPTR.  Fieschko billed about 7.7 hours related to what he describes as the Pre-Trial Statement.  While the IPTR requires some work in listing witnesses and exhibits, and the parties' statements of facts, it does not require over 24 hours of work by three different attorneys.

Regarding deposition preparation, Noel billed over 32 hours related to the Powell and Hubbard depositions.  Part of that time may be allotted to attending the deposition of Hubbard.  6/24/02, 7/7/02, 7/8/02, 7/9/02.  Fieschko billed well over 30 hours for the same deposition preparation.  Yet, only one attorney could have taken or defended the deposition, even if two were present.  Two attorneys should not bill for this task.  Alternatively, if they do, the attorneys should

reduce the time billed due to prudent billing judgment.  In addition, a third Branch attorney, Clyde DeMersseman billed for deposition preparation and for attending some Plaintiffs' depositions.  Thus, in late March and early April 2003, Fieschko billed about 74 hours of deposition preparation, attendance and travel time.  Noel billed about 48 hours during the same time period for similar work. DeMersseman billed another 19 hours during the same period for similar work.

Some of Mr. Noel's billing entries improperly charge attorney rates for performance of clerical tasks.  For example, he billed .8 to download court forms on the "IPTR and PDP."  This is a task that should be performed by a lower paid support staff.  Alternatively, if performed by an attorney, the attorney's normal hourly rate should not be used.  The billing entry also seems excessive based on the Court's knowledge of how to access and print those pleading documents.  Noel billed .5 on research for New Jersey service of process/process servers on 11/19/02, a task that a paralegal could and routinely does perform.  On 11/14/03 (sic) Noel billed 5.0 for "Depos – Transported Watkins to Airport."  The transportation portion of the billing entry should not be billed as attorney time.

With respect to some of the motion practice work, there is again overlap and duplication of efforts between Noel and Fieschko.  For example, Fieschko billed 12.1 hours to work on the opposition brief to Defendant's motion to compel, and Noel billed for over 17 hours of work on the same brief.  *See* entries of Fieschko for 1/27/03, and Noel, for 1/8/03, 1/27/03, 1/22/03, 2/21/03. Plaintiffs' response brief was slightly over seven pages long.  Again, it is unreasonable to bill approximately 30 hours of work by two attorneys to prepare the seven-page response brief at issue.

Regarding a stipulated joint motion to consolidate the two above-captioned cases, Fieschko billed 1.2 hours and Noel billed over 13 hours in addition to some portion of 3.75 hours he billed on 6/30/03.  *See* billing entries 5/14/03, 5/15/03, 5/16/03, 5/19/03, 6/19/03, 6/20/03, 6/23/03, 6/30/03,

7/2/03, 7/7/03.   The supporting brief was stipulated to by all parties and consisted of a little over 3 pages.  In relation to what was necessary, the Court finds the billing excessive.

Some of Noel's billing entries also suffer from lack of precision.  Many of Noel's entries in March 2003 refer to emails prepared and/or reviewed, but few of the entries provide the topic of those communications so as to allow a court to make a determination whether the time spent was reasonable and necessary.  *See, e.g.,* 3/3/03, 3/5/03, 3/6/03, 3/7/03.  Tenth Circuit precedent instructs that more detail is necessary.  *See* Ramos and Jane L..

Noel also improperly includes billing for three other separate lawsuits, Altier .v GAB, Strickland v. GAB, and Harp v. GAB.   It appears that Noel's billing entries related to those three cases begin on about 8/25/03 and run through 11/25/03.  The hours billed for these three cases total approximately 43 hours.  All of those hours are impermissibly billed.

Based on the duplication of work among attorneys, improper inflation of work done, improper billing for separate litigation, the use of block billing and imprecise billing, the Court recommends that 30% of Mr. Noel's 948.5 billed hours be reduced.  Thus, the total hours, as reduced would be 663.95 multiplied by $185/hour = $122,830.75.

### Clyde DeMersseman Billings

Mr. DeMersseman, another Branch attorney, worked on this case intermittently from November 12, 2002 until June 15, 2005.  He billed a total of 98.25 hours.  However, a number of his billings, if not most of them, pertain to the separate lawsuits of Glukowsky (and Fields), Strickland, and Altier.  *See* billing entries beginning on November 13, 2003, although most likely some of the billing entries before this date also relate to these other separately filed cases.  In addition, as stated

38

above, some of Mr. DeMersseman's earlier billings amount to duplicative work for which one or two other attorneys billed.  *See* entries around April 2003.

To account for duplication of work and improperly billed work, the Court recommends that 75% of Mr. DeMersseman's 98.25 billed hours be reduced.  Thus, the total number of hours, as reduced, would be 24.56 hours multiplied by $200/hour = $<u>4,912.00</u>.

### *Robert Bliss Billings*

Mr. Bliss, another Branch attorney, worked on this case for a short time, from 9/15/04 through 6/15/05 for a total of 68.3 hours.  Some of Mr. Bliss' billings suffer from the same problematic billing practices previously noted.  For example, Mr. Bliss billed for work that appears clerical in nature, *e.g.,* "file maintenance and index pleadings" (.5), "file maintenance and index pleadings" (1.0), "docket search; pleadings review" (.75), "file maintenance and index pleadings" (1.4), "docket search; pleadings review (1.1), "file maintenance and index pleadings (.5), "file review, file maintenance and indexing pleadings (.2 or 2 hours), "file maintenance and indexing pleadings" (.5), and "collecting information from file; preparation of request for attorneys fees, costs" (.3 or 3 hours).  While some of Mr. Bliss' work is, indeed, substantive, *e.g.,* he billed for writing the damages brief, other entries are imprecise.  For example, he billed for a number of meetings and conferences with Mr. Branch, for which he charged a total of almost 5 hours.  And, while Mr. Bliss billed significant hours in writing the damages brief and doing the research (about 43 hours), Mr. Fieschko also billed for work on the damages brief in the same time period, totaling approximately another 43 hours.

Based on duplicative work, clerical billings, and imprecise billing entries, the Court recommends that Mr. Bliss's 68.3 billed hours be reduced by 30%. Thus, the total hours as reduced would be 47.81 multiplied by $145/hour = $6,932.45.

### Brian Brack Billings

Mr. Brack is another Branch attorney. He worked for a total of 3.7 hours on four occasions. His work primarily consisted of short telephone calls, preparation of memos, conference calls and review of information. The Court recommends that no reductions be made to Mr. Brack's billed hours. Thus, the hours billed, 3.7, multiplied by $200/hour = $740.00.

### Justice Stowers Billings

Mr. Stowers was of counsel for the Branch Law Firm. He billed a total of 4.5 hours. Even though these exact hours for the exact same tasks were billed by other Branch attorneys, the Court recommends that no reduction be made to Mr. Stowers' hours. Thus, the total hours billed, 4.5, multiplied by $325/hour = $1,462.50.

### Shariesse McCannon Billings

Ms. McCannon is a paralegal with the Branch Law Firm. She billed a total of 548.25 hours. Her billing entries generally are more precise and understandable than many of the attorneys' billed hours in this case. The primary problem the Court sees with Ms. McCannon's billings is that she also billed for work done in the four other separate cases filed in this district. Those billings appear to begin on 8/11/03 and are entered through 8/11/04. The Court recommends that her billed hours of 548.25 be reduced by 25%. Thus, the total hours billed, as reduced, would be 411.19 multiplied by $85.00/hour =$34,951.15.

C.      **Further Adjustment of Fees**

Defendant argues that Plaintiffs lost three-quarters of this case by losing on the motion to change venue, discovery-related disputes and the Task Order II claims.  Thus, GAB contends that the requested fees should be reduced significantly since Plaintiffs purportedly achieved partial or limited success.  The Court disagrees that Plaintiffs' lack of success on the venue motion or discovery disputes figure into the question of whether fees should be further reduced.  However, the Court recognizes that Plaintiffs were not successful at summary judgment on the overtime compensation claims sought by the Task Order II claim reviewers.

Plaintiffs respond that they spent "virtually no time on these [Task Order II] claims since these individual simply did not participate in this action.."  "There was very little time spent on the claim under Task Order II, given that there were no separate depositions or inquiries made regarding this time period."  [Doc. No. 107.]

The Court reviewed the Complaint, the parties' voluminous summary judgment pleadings,[21] and the Court's opinion issued May 16, 2005.  Based on these pleadings, it is difficult to believe that Plaintiffs spent virtually no time on issues concerning Task Order II claims.  The Complaint sets forth Count II "Secondary Pay Period" and alleges that all Plaintiffs were placed on the new pay scale and were entitled to overtime pay.  As best as the Court can determine, the issue of the Task Order II claims was thoroughly briefed by both parties in their summary judgment pleadings.  Finally, the Court's May 16, 2005 ruling contains a comprehensive analysis as to the Task Order II claims.  Thus, the Court concludes that Plaintiffs were partially successful on their overtime compensation claims

---

[21]The District Court Judge struck Plaintiffs' initial motion for summary judgment and brief, requiring that they be re-filed in accordance with this District's local rules.

although it is unable to determine an exact percentage for that success.  In other words, neither party supplied the Court with an estimate of what Plaintiffs claimed as damages for Task Order I claims compared to Task Order II claims.

Because of Plaintiffs' partial success and also because of Plaintiffs' failure to exercise billing judgment in submitting the billing entries discussed above, the Court could reduce the overall billing further.  However, due to the significant cuts already imposed, the Court declines to impose an across-the-board cut, and therefore, no further reductions will be imposed.  So, too, the Court declines to enhance the fee award as requested by Plaintiffs, *i.e.,* that they were exceptionally successful or that the "genius factor" justifies such enhancement.

The total fee award, added together for all three firms, would be $ 425,819.85.

## III.   COSTS

The FLSA provides for costs to a prevailing party.  The statute states: "The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee . . . and costs of the action."  29 U.S.C. § 216(b).  The Tenth Circuit has discussed that "[u]nder the FLSA, costs include reasonable out-of-pocket expenses . . .  They can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920."  Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 968-69 (10th Cir. 2002) (comparing FMLA's costs provisions with FLSA cost provisions) (internal citations omitted).

In Smith, the plaintiff argued that certain (undefined) out-of-pocket costs should be recoverable under the costs provision of the FLSA (unlike the provisions of Rule 54 or 28 U.S.C. § 1920) because of the FLSA's "remedial and . . . more broadly interpreted cost-shifting aspect."  Id. at 969 (internal citation omitted).  The 10th Circuit held that the district court properly declined to

award such expenses that were "normally absorbed as part of law firm overhead" and that the Court had previously held such expenses were not recoverable.  Id.

An award of costs under Rule 54(d)(1) "rests in the sound discretion of the trial court." Allison v. Bank One-Denver, 289 F.3d 1223, 1248 (10th Cir. 2002).  Absent statutory authority, costs available to the prevailing party under Rule 54(d)(1) are limited to those set forth in 28 U.S.C. § 1920.  While the FLSA is statutory authority for awarding costs (indeed, the court is mandated to award costs under § 216(b)), the FLSA is silent as to defining what costs are permissible.  Therefore, the Court looks to § 1920 for guidance.

Title 28 U.S.C. § 1920 provides costs for "fees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees, and compensation of court appointed experts," etc.  An attorney's accommodation and travel expenses are not recoverable as costs under § 1920.  Sorbo v. United Parcel Service, 432 F.3d 1169, 1180 (10th Cir. 2005).

The three Plaintiffs' law firms submitted separate cost bills, which total $21,990.42. Defendant did not respond specifically to the request for costs, other than to argue generally that fees and costs should be reduced for the reasons discussed previously.

Most of Fieschko's costs ($10,172.31) relate to airline tickets, car rentals, hotel charges, deposition fees and the mediator's fees.  The Court proposes taxation of the following costs requested by Mr. Fieschko:

| | | |
|---|---|---|
| 7/31/2002: | Garber Reporting | $1093.29 |
| 12/17/2002: | Depositions | $ 135.00 |

43

| 6/5/2003: | DGR Court Reporting: | $ 110.00 |
| 8/4/2003: | Paul Bardacke (mediator) | $1142.57 |
| 12/7/2004 | Esquire Deposition | $1577.80 |

In so proposing, the Court again observes the inexact and imprecise records submitted by Mr. Fieschko relating to his costs bill. For example, he bills $300.00 for "Lawyers Fund" and $135 for "Depositions". Notwithstanding, the vague entries provided for deposition costs and the fact that Mr. Fieschko did not submit evidence showing the deposition transcripts were necessarily obtained for use in the case, the Court proposes the above costs be permitted. Yet, to the extent that the January 6, 2003 entries for "Powers, Garrison" may relate to deposition transcript costs, the Court disallows those costs since Mr. Fieschko failed to sufficiently define those costs.

The Court further observes that neither Rule 54(d) nor § 1920 allow mediation costs to be taxed. Moreover, there is case law indicating that mediation costs are not recoverable costs. *See, e.g.,* Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002) (holding that § 1920 does not authorize taxing mediation fees as costs), Mota v. Univ. of Tex. Houston Health Science Ctr., 261 F.3d 512, 530 (5th Cir. 2001) (holding that a mediator's fees are not covered by § 1920 and may not be taxed as costs). However, it appears that some reasonable out-of-pocket expenses, even though not taxable under Rule 54 or § 1920, may be awarded as costs under the FLSA under its "remedial" and "more broadly interpreted cost-shifting aspect." *See* Smith, 298 F.3d at 968-69. In view of the FLSA's remedial purpose and the Court's desire to encourage pre-trial efforts to settle cases, the Court proposes to permit the costs involved in mediation.

The total costs taxable for Mr. Fieschko, therefore, would be: $4,058.66.

The Branch Law Firm's proposed costs ($11,568.91) consist of meals, hotel charges, car rentals, airfare, parking, witness fees, filing fees for three other separately filed cases, and again, mediation fees.[22]   The Court proposes that the following costs submitted by the Branch Law Firm be permitted:

| | | |
|---|---|---|
| 11/19/02: | Depositions of Pulkrabek, Kramer, Ellison, Holgreen, Bain, Hall, Murphy & Watson | $2,271.86 |
| 11/22/02 | Witness Fee-Debord | $   88.64 |
| 11/22/02 | Witness Fee-Debord | $   81.69 |
| 4/8/03 | Deposition of Haseloff | $  379.60 |

The Court concludes that counsel's travel, hotel and meal expenses are not recoverable.  *See* Sorbo.  Moreover, the Court does not permit the filing and service fees relating to the other cases that were filed separately in this District, *i.e.,* entries for 8/12, 8/18, 8/26, 9/8 and 9/12/03.

Thus, the Court proposes that the total costs recoverable by the Branch Law Firm are: $2,821.79.

Woods submitted a bill of costs in the amount of  $249.20, including the filing fees of this case, travel to the court apparently and "miscellaneous costs" of $85.00.  The Court proposes that the filing fees of $150.00 be taxed and awarded as costs to Woods.  Travel fees are not permitted, and the Court does not award for "miscellaneous costs".

In sum, total costs awarded to the three firms would be: $7,030.45.

---

[22]The mediation fees submitted by Fieschko and the Branch Law Firm differ as to date and amount.  Thus, the Court requested counsel to provide clarification as to possible duplication.  On January 20, 2006,  Mr. Fieschko faxed the Court, stating that he paid $1,142.52 to the mediator for the mediation held on July 17, 2003.  The Branch Law Firm submitted a letter, dated January 25, 2006, stating that their own billings for mediators' fees were submitted in error, and are therefore, withdrawn.

**IV.    PRE AND POST JUDGMENT INTEREST**

Plaintiffs state that if they are not awarded liquidated damages they will seek prejudgment interest.  They ask that they be allowed to file a timely motion and brief on the issue.  With respect to post-judgment interest, Plaintiffs state they will seek such interest if it becomes an issue.  The Court need not address the issue concerning an award of post-judgment interest.  Thus, it limits its discussion to that of prejudgment interest.

It is well settled that Plaintiffs cannot recover prejudgment interest if they receive an award of liquidated damages.  *See* City of Sapulpa., 30 F.3d at1290 ("If the district court finds that liquidated damages should be awarded it must vacate its award of prejudgment interest, because it is settled that such interest may not be awarded in addition to liquidated damages.").  Moreover, Plaintiffs agree that if they were awarded liquidated damages, they would not be entitled to prejudgment interest.

Here, Plaintiffs were not awarded liquidated damages, and there remains the question of whether they are entitled to prejudgment interest.  The Tenth Circuit has not expressly decided the issue, and there is a split in authority among some circuits.   The Tenth Circuit states that "Prejudgment interest is ordinarily awarded in federal cases, although it is not available as a matter of right."  Pabst, 228 F.3d at 1136 (internal citation omitted).  However, in Pabst, the Tenth Circuit apparently assumed, without further analysis that an award of prejudgment interest was proper in cases, brought under 29 U.S.C. § 216(b) (like the present matter).  *See* Pabst, 228 F.3d at 1136 (circuit found no abuse of discretion in trial court's decision to award prejudgment interest in FLSA action to recover compensation for on-call time and overtime).

In <u>City v. Sapulpa</u>, the Tenth Circuit discussed an award of prejudgment interest, but only in terms of cases brought under section 17 of the FLSA. "Finding no specific authority from the Tenth Circuit Court of Appeals on the issue prejudgment interest in an action for injunctive relief under the FLSA, this Court follows the majority of circuits which hold that prejudgment interest should generally be included in a back pay award in an action seeking injunctive relief under section 17 of the FLSA." 30 F.3d at 1289 n. 6.  this case was not filed under § 17 of the FLSA.

The Fifth Circuit Court of Appeals, while not entirely consistent in its rulings, distinguishes between claims brought under 29 U.S.C. § 216 (action to recover unpaid minimum wages, unpaid overtime compensation and liquidated damages), and § 217 (injunction.)  <u>Knowlton v. Greenwood Indep. School Dist.</u>, 957 F.2d 1172, 1183 (5th Cir. 1992).  The Fifth Circuit held that prejudgment interest was not available in § 216 actions, but was available in § 217 actions.  <u>Id.</u>  "Although '[t]he reason for distinguishing between section 217 and section 216 for purposes of prejudgment interest is not readily apparent,'" this panel is bound by prior circuit precedent.  <u>Id.</u>  Accordingly, in <u>Knowlton</u>, a § 216 case, the Court denied an award for prejudgment interest.  <u>Id.</u>  *See also* <u>Cox v. Brookshire Grocery Co.</u>, 919 F.2d 354, 357 (5th Cir. 1990) (district court did not err in denying prejudgment interest in § 216 case); <u>Foremost Dairies, Inc. v. Ivey</u>, 204 F.2d 186 (5th Cir. 1953) (although liquidated damages not awarded, pre-judgment interest not recoverable in suit brought under § 216(b)).

In contrast, other courts have determined that prejudgment interest should be awarded in the absence of liquidated damages "to offset the effect of wages or damages being wrongfully withheld and make the prevailing parties whole."  <u>Roy v. County of Lexington, South Carolina</u>, 928 F. Supp. 1406 (D.S.C. 1996) (internal citation omitted), *vacated in part, on other grounds by,* 948 F. Supp.

529 (D.S.C. 1996).  In <u>McClanahan v. Mathews</u>, the Sixth Circuit reasoned that because the Supreme Court had not decided whether prejudgment interest should be awarded in § 216(b) cases when liquidated damages are denied, the district court must award interest in such cases on back pay from the date the claims accrued.  <u>McClanahan</u>, 440 F.2d 320, 326 (6th Cir. 1971).

Chief Judge Vazquez did not specifically refer the question of an award of prejudgment interest for a recommendation by the undersigned judge.  However, the determination is assumed to be part and parcel of the issues of damages and attorney's fees.  Based on the above-discussed split of authority on the issue and the Tenth Circuit's failure to directly address the question, this Court proposes that the parties first attempt in good faith to resolve this matter short of engaging in additional motion practice.

Should, however, those efforts fail, the Court recommends that each party file a single, concise brief discussing the split in authority among courts and relevant Tenth Circuit Court decisions regarding whether prejudgment interest should be awarded in § 216(b) cases where liquidated damages are denied.  If briefing is necessary, Plaintiffs should submit their motion within 20 days from the District Court's ruling on damages and attorney fees; Defendant will have 20 days after receipt of Plaintiffs' motion, to file a response.  Both parties' briefs should set out the proposed rate of interest and statutory support for that rate, along with the proper period of time for which prejudgment interest should accrue, and the calculations or estimates of prejudgment interest due.

### <u>Recommended Disposition</u>

For all of the reasons discussed above, the Court recommends that Plaintiffs' request for damages and attorney's fees be granted in part and denied in part, that their request for costs be granted in part and denied in part, and finally that the parties attempt to resolve any issues regarding

48

an award of prejudgment interest short of engaging in additional motion practice.  If the parties are unable to resolve the issue of prejudgment interest, the Court proposes that the parties submit briefs as described herein.

*Lorenzo F. Garcia*

Lorenzo F. Garcia
Chief United States Magistrate Judge